**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TIARA UNDERWOOD,**

       **Plaintiff,**        **CIVIL ACTION NO. 12-cv-12633**

   **vs.**

                             **DISTRICT JUDGE ARTHUR J. TARNOW**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
**_____/**

## REPORT AND RECOMMENDATION

Plaintiff Tiara Underwood seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 8) and Defendant's Motion for Summary Judgment (docket no. 11). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

### I.      RECOMMENDATION:

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be GRANTED IN PART and DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 11) be DENIED.

**II.     PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Social Security Income with protective filing dates of September 30, 2008, alleging that she had been disabled since June 9, 1994,[1] due to major depressive disorder, endometriosis, sleep apnea, obesity, and borderline intellectual functioning. (*See* TR 23, 25.) The Social Security Administration denied benefits. (*See* TR 23.) Plaintiff requested a *de novo* hearing, which was held via video conference on December 6, 2010, before Administrative Law Judge (ALJ) Michael Hellman, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 30-31.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. The parties then filed their Motions for Summary Judgment.

**III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY**

    **A.     Plaintiff's Testimony**

Plaintiff was 27 years old at the time of the administrative hearing and 23 years old at the time of alleged onset. (*See* TR 47.) She testified that she is 5'4" tall and 180 pounds. (TR 47-48.) Plaintiff has a high-school education and past work experience as a bagger in a supermarket and as a retail sales clerk. (*See* TR 48, 50.) She testified that she hadn't worked anywhere since October 31, 2007. (TR 48.) Plaintiff testified that she attempted to find a job after leaving her sales-clerk position in October 2007 but that she was unsuccessful due to her medical conditions. (TR 52-53.)

---

[1] At the time of her hearing, Plaintiff amended her alleged onset date to October 31, 2007. (*See* TR 23.)

At the time of the hearing, Plaintiff had no source of income; she was single and lived with only her two children. (TR 47-48.)

Plaintiff testified that she could not work primarily because of her endometriosis. (TR 53.) She told the ALJ that her condition caused her to get frustrated, sleepy, and irritated. (TR 53.) She indicated that she "don't want to basically be around nobody" and that she had been diagnosed with the condition about 3 years earlier. (TR 53.) Plaintiff testified that the pain starts in her stomach about a day before her cycle and that it last 10 to 12 days. (TR 55.) She indicated that the pain feels "like [she's] about to have a child" and that "it's like a, a stabbing-type, cutting, burning-type pain." (TR 55.) On a ten-point scale, Plaintiff testified that her pain is a ten. (TR 55.)

Plaintiff testified that her physician, Dr. Kahn, had put her on a Lupron Depot shot, but because it was causing problems with her bones, he changed her medication. (TR 53.) Because the new medication was not helping with her pain, Dr. Kahn had referred her to a pain specialist. (TR 53-54.) At the time of the hearing, she had not yet met with the specialist; she had been treating with Tylenol 3 and Vicodin, which she indicated had been prescribed by Dr. Kahn. (TR 54.) Plaintiff further testified that her current medications "sometimes" provided relief but they made her sleepy. (TR 56.) When she could not get the pain under control, she would go to the hospital. (TR 56.)

Plaintiff testified that she was also troubled by anxiety, which she first learned of in 2005. (TR 56.) She testified that at the time, she was seeing a therapist and a psychiatrist who prescribed anti-depressants; she indicated that the psychiatrist's name was "Dr. White" or "Dr. Wright." (TR 57.) Plaintiff testified that at the time of the hearing, she was treating with a psychiatrist named "Don," whom she saw every two weeks, and a therapist, Dr. Ferd, whom she saw every-other Wednesday. (TR 57-59.) Plaintiff indicated that her anxiety is characterized by mood swings,

3

agitation, and an elevated heart rate. (TR 59.) She told the ALJ that she had these anxiety attacks a couple of times a week when she was under stress, "or just sometimes, it might just come out off the blue." (TR 59-60.) She testified that although Don was prescribing her anti-depressants and "a nerve pill," she only felt better when she was by herself. (TR 60.)

Plaintiff also testified that she had problems with memory, concentration, and directions. (TR 66.) She would take daily naps for about an hour because if she did not, she would be groggy, frustrated, and irritated. (TR 67.) She testified that she could not sleep well at night because she would cry or her mind would wander. (TR 67.)

Plaintiff told the ALJ that she was able to bathe, dress, and groom herself. (TR 60.) She was also able to care for her two school-age children (with help from her parents). (TR 61, 68.) She would feed them, dress them, and drive them to school. (TR 61.) Plaintiff testified that she would drive whenever necessary, including trips to the grocery store or picking her kids up from school on a daily basis. (TR 61.) Plaintiff further testified that her son was in boy scouts and played basketball, and her daughter was in a book club. (TR 62.) She would drive her children to these activities and attend them herself. (TR 62-63.) Plaintiff also testified that she cleaned her house, cooked meals, read books, watched a little television, and used her mother's computer every day when Plaintiff would stop by her mother's house. (TR 63-64.) Plaintiff indicated that she socialized with her mother, but she did not have any friends because she did not trust anyone. (TR 65.) She did attend a three-hour church service every-other Sunday. (TR 65.)

### B. Medical Record

Defendant asserts that "[t]he ALJ included a comprehensive summary of the relevant facts" in his opinion and does not set forth a separate account of the medical record. (Docket no. 11 at 6.) Likewise, Plaintiff does not set forth a factual record in her brief. (*See* docket no. 8.) The Court,

4

therefore, having reviewed the record in full, incorporates by reference the medical record as set forth in the ALJ's opinion (TR 25-30) and will make references and citations to additional medical evidence as necessary throughout this Report and Recommendation.

### C. The Vocational Expert

The ALJ asked the VE to describe Plaintiff's past relevant work, and the VE stated that Plaintiff worked as a bagger, which she described as light-to-medium, unskilled work, and as a sales clerk, which she described as light, unskilled work. (TR 69.) The ALJ then asked the VE to consider whether a person of Plaintiff's age, education, and work experience, who was limited to one or two-step tasks with only occasional minor changes in the work setting, could perform Plaintiff's past work. (TR 69-70.) The VE testified that such a person could perform work as a bagger. (TR 70.)

The ALJ then asked the VE to assume that the bagger position was not relevant and asked whether such an individual could perform other work in the economy. The VE testified that there would be work for such a person. (TR 70.) She testified that "[e]xamples in the light, unskilled category would include" such positions as a dishwasher, an assembler, and a laundry worker. (TR 70.) The VE provided the following DOT codes, regional job numbers, and national job numbers:

- Dishwasher: DOT 318.687-018; 4,200 regional; 138,000 national;
- Assembler: DOT 699.685-026; 11,000 regional; 421,000 national; and
- Laundry Worker: DOT 361.685-014; 2,500 regional; 85,000 national.

(TR 70.) The ALJ then asked the VE whether such a person would be precluded from all work if she were also "unable to engage in sustained work activity on a regular and continuing basis." (TR 71.) The VE testified that such an individual would be precluded from all work at all exertion levels. (TR 71.)

Plaintiff's attorney asked the VE how many absences are generally allowed for entry-level, unskilled positions on a monthly basis. (TR 72.) The VE testified that one unpredictable absence is typically allowed. (TR 72.) Plaintiff's attorney also asked the VE about breaks, naps, and concentration. The VE testified that employees working entry-level, unskilled positions are generally afforded two 15-minute breaks and a 30- to 60-minute lunch break, they are not allowed to take unpredicted naps, and they would be precluded from work if they were not productive more than 80% of the time. (TR 72-73.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2010; had not engaged in substantial gainful activity since October 31, 2007; and suffered from severe major depressive disorder; she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 25-27.) The ALJ found that Plaintiff also had a history of endometriosis, sleep apnea, obesity, and borderline intellectual functioning but that these impairments were "not severe withing the meaning of the Regulations." (TR 25-27.) The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and found that Plaintiff retained the residual function to perform a full range of work at all exertion levels except that Plaintiff must be limited to one- or two-step tasks with only occasional minor changes in the work setting. (TR 28-30.) Thus, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. Therefore, she was not disabled under the Social Security Act at any time from October 31, 2007, through the date of the ALJ's decision. (TR 30-31.)

## V. LAW AND ANALYSIS

### A. Standard of Review

6

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

7

      (2)      Plaintiff suffered from a severe impairment; and

      (3)      the impairment met or was medically equal to a "listed impairment;" or

      (4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

      **C.**      **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of

8

the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded under sentence 4 for the following reasons: (1) the ALJ improperly found Plaintiff's testimony not credible; (2) the ALJ failed to account for "the emotional component of the case;" and (3) the ALJ improperly relied on the VE's testimony where the DOT codes provided by the VE were inaccurate.[2] (*See* docket no. 8 at 6-11.)

### 1. Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all,

---

[2]Plaintiff characterizes the first two assertions in terms of an improper hypothetical presented to the VE, but Plaintiff's arguments, at their core, attack the propriety of the ALJ's RFC finding.

9

only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff asserts that the ALJ erred when he found that Plaintiff was not credible because "there is no reasoning to support" his decision. (Docket no. 8 at 11.) The Court disagrees. To the contrary, the ALJ was particularly detailed in explaining his finding with respect to Plaintiff's credibility. The ALJ set forth his reasoning in eight paragraphs over two pages and discussed, in part, inconsistencies in Plaintiff's functional reports, her ability to take care of her home and children, discrepancies between her testimony and her medical records, her treatment for anxiety, her regular daily activities, the effectiveness of her medications, a lack of documentation from medical providers, the inconsistency of her statements with the objective medical record, her demeanor and participation at her hearing, and her physician's opinions. (TR 29-30.) Therefore, the Court finds that the ALJ was sufficiently specific in his reasoning to make clear to Plaintiff and

the Court the weight the he gave to Plaintiff's statements and the reasons for that weight. Thus, the Court recommends denying Plaintiff's Motion with regard to this issue.

### 2. The Emotional Component of Plaintiff's Impairments

Plaintiff claims that the hypothetical proposed to the VE (and therefore the RFC as determined by the ALJ) "did not include the emotional component of the case." (Docket no. 8 at 8.) Plaintiff then states that an "MSS report from [Plaintiff's] therapist dated 11/15/10 shows claimant suffers with ability to relate and interact with supervisors and coworkers; ability to deal with the public: and ability to withstand the stress and pressures associated with an eight hour work day and day to day work activity." (*Id.*) Plaintiff then asserts that "[t]hese restrictions with her physical ailments would render [Plaintiff] not able to work." (*Id.*) Defendant contends that the ALJ was not required to include these restrictions in Plaintiff's RFC because the ALJ was only required to include those limitations that he found credible. (Docket no. 11 at 10.)

Plaintiff's contention rests on the ALJ's alleged failure to consider and include restrictions from a one-page Medical Source Statement filled out on November 15, 2010, by Plaintiff's therapist.[3] (*See* TR 350.) But the ALJ did consider the document and gave it "little weight" because "there are no findings to support the . . . opinion." (TR 30.) The Court agrees, and Plaintiff cites to no such findings. Thus, the ALJ was not required to include all of the limitations therein. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Having found that Plaintiff's subjective complaints were not wholly credible, and having found that the November 15,

---

[3]While the document itself indicates that this therapist had been treating Plaintiff for "3 yrs. plus," the completing therapist's last name appears to be "Reif" or "Reit." (*See* TR 350.) Plaintiff indicated that she had been seeing a therapist named "Dr. Ferd" for several years. (*See* TR 57-59.) Thus, it is not entirely clear who filled out the MSS. Nevertheless, the ALJ considered this person Plaintiff's "treating therapist," (*see* TR 30) and the Court will as well.

2010 MSS would be afforded little weight, the ALJ did not err when he decided to exclude Plaintiff's alleged mental limitations in her RFC. Therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

### 3. The VE's Testimony and DOT Numbers

Plaintiff notes that the DOT number provided by the VE to the ALJ during the VE's testimony were incorrect. (Docket no. 8 at 7.) The DOT number that the VE provided for a Dishwasher, DOT 318.687-018, is actually the DOT number for a Silver Wrapper. The DOT number that the VE provided for the Assembler, DOT 699.685-026, is actually the DOT number for a Power-Screwdriver Operator. And the DOT number that the VE provided for the Laundry Worker, DOT 361.685-014, is actually the DOT number for a Continuous-Towel Roller Machine Operator. Plaintiff asserts that because the VE's testimony was based on the DOT, her testimony may not have been accurate, and therefore, the ALJ improperly relied on inaccurate testimony regarding the number of available jobs in the regional and national economy. (*Id.* at 7-8.) Defendant argues that Plaintiff's position is mere speculation. (Docket no. 11 at 13.) Moreover, Defendant contends, it was Plaintiff's responsibility to cross-examine the VE at the hearing or object to her testimony, and she cannot attribute her failure to do so to the ALJ. (*Id.*)

"'[N]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Wilson v. Comm'r*, No. 10-13828, 2011 WL 2607098, *6 (E.D. Mich. July 1, 2011) (Cohn, J.) (quoting *Martin v. Comm'r*, 170 F. App'x 369, 374 (6th Cir. 2006)). Plaintiff had a full and fair opportunity to cross examine the VE and did so with regard to other issues. But SSR 00-4p does provide that the adjudicator must resolve a conflict between the DOT and the VE "before relying on the VE . . . evidence."

Plaintiff asserts that the testimony "may not be accurate" and that she "do[es] not believe the number of jobs for power screwdriver operator is the same as the number of jobs for assembler." (Docket no. 8 at 7.) Thus, Plaintiff appears to assume that when the VE testified to the number of available positions, she referred to the Silver Wrapper, Power-Screwdriver Operator, and Continuous-Towel Roller positions rather than the Dishwasher, Assembler, and Laundry Worker positions. Moreover, Plaintiff's argument assumes that she would be precluded from working as a Silver Wrapper, Power-Screwdriver Operator, or Continuous-Towel Roller operator, but the VE testified that the three positions she described were merely examples of work that Plaintiff could perform. Plaintiff provides no evidence to support her assumptions.

Nevertheless, the court cannot make a proper determination based on speculation. Without proper DOT codes, the Court has (and the ALJ had) no way to know whether the VE's testimony was accurate. Therefore, the ALJ did not properly resolve the conflict between the DOT and the VE's testimony. And while Plaintiff's RFC would seem to indicate that she is capable of performing substantial work in the economy, the Court will not engage in such speculation. Therefore, the Court should remand this matter so that the ALJ can further examine the VE and make a proper Step-5 determination.

## VI.    CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 8) should be GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment (docket no. 11) should be DENIED. This matter should be remanded for further examination of the VE and a proper Step-5 determination.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 31, 2013      s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 31, 2013      s/ Lisa C. Bartlett
                                         Case Manager